UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GONZALO ARIEL D.L.,[1]<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br>Respondents. | No. 1:26-cv-06973-TLN-JDP<br>A# 222-553-469<br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Gonzalo Ariel D.L.'s Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed an opposition. (ECF No. 6.) For the reasons set forth below, the Court GRANTS the petition. (ECF No. 1.) Respondents are directed to IMMEDIATELY RELEASE Petitioner.

///

///

///

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is a noncitizen who entered the United States on a B2 visitor visa on August 15, 2021. (ECF No. 6-2 at 2.) The government alleges that he remained for longer than the term authorized by that document. (*Id.*) Petitioner is married to a United States citizen and worked as a marina dockmaster in Miami, Florida. (ECF No. 1 at 3.)

After local authorities arrested him for driving without a valid driver's license, U.S. Immigration and Customs Enforcement ("ICE") took custody of Petitioner on June 21, 2026, and served him with a Notice to Appear in immigration court. (ECF No. 6-1 at 1–3; ECF No. 6-2 at 2.) Aside from this arrest, Petitioner has no other criminal history. (ECF No. 6-2 at 2; ECF No. 6-3.)

In early July 2026, Petitioner was transferred to California City Detention Facility. (ECF No. 1 at 9.) On August 5, 2026, an immigration judge denied Petitioner bond, finding him to be a flight risk. (ECF Nos. 6-4, 6-5.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on September 1, 2026, challenging the lawfulness of his civil detention. (ECF No. 1.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

///

## III. ANALYSIS

Petitioner argues that his detention violates the Fifth Amendment Due Process Clause and that his bond hearing failed to provide constitutionally sufficient process. (ECF No. 1 at 12–21; ECF No. 12 at 5–8.) Respondents contend that Petitioner's claims are barred by prudential exhaustion and that he is lawfully detained pursuant to 8 U.S.C. § 1226(a). (ECF No. 6 at 2–4.)

### A. Prudential Exhaustion

Respondents argue that Petitioner should be required to exhaust administrative remedies before pursuing habeas relief, particularly given his pending appeal to the BIA of the IJ's decision denying him bond. (ECF No. 6 at 2–3.) Petitioner argues that requiring exhaustion would cause him irreparable injury. (ECF No. 12 at 3–5.)

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). An administrative appellate record is not necessary to reach a proper decision on Petitioner's claim that his detention does not comport with due process, as the Court is in possession of all evidence necessary to resolve this claim, including the immigration judge's extensive, written ruling denying bond. (ECF No. 6-5.) Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, there is no indication that the BIA is likely to correct any mistakes in the IJ's decision. *See, e.g.*, *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error.") Additionally, because Petitioner is currently detained by the government, irreparable injury would result from

requiring exhaustion. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Thus, the Court declines to require prudential exhaustion in this case.

B. Fifth Amendment Due Process Challenge to Bond Proceedings

Petitioner claims that the bond proceedings before the immigration court violated his right to due process because the record before the immigration court did not demonstrate that detention was justified, and the immigration judge ("IJ") failed to meaningfully consider mitigating evidence relating to Petitioner's flight risk.[2] (ECF No. 12 at 6–8.) Respondents argue that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(a), which has been upheld against constitutional challenges, and thus his detention is constitutional. (ECF No. 6 at 3–4.)

As constitutional challenges to IJ detention determinations present mixed questions of fact and law, the appropriate standard of review is "abuse of discretion." *Martinez v. Clark*, 124 F.4th 775, 783–84 (9th Cir. 2024). However, "due process claims and questions of law raised in immigration proceedings" are reviewed de novo. *See Singh v. Holder*, 638 F.3d 1196, 1202–03 (9th Cir. 2011). Under an abuse of discretion standard, the court does not reweigh evidence but instead considers whether the IJ "applied the correct legal standard." *Id.* (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. Instead, its review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-CV-08118-LB, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020)).

*i. Whether the Record Before the IJ was Sufficient to Find Petitioner was a Flight Risk*

Petitioner argues that the record before the IJ was not sufficient to find a risk of flight because the IJ relied on Petitioner's single arrest for driving without a license. (ECF No. 12 at 6.)

---

[2] Petitioner also argues that the IJ failed to consider reasonable alternatives to detention. (ECF No. 12 at 8.) Because the Court finds that the appropriate remedy in this case is to order Petitioner's immediate release, it need not address this argument.

Respondents make no specific argument with respect to the sufficiency of the evidence before the immigration court. (*See generally* ECF No. 6.)

In making a bond determination, an immigration court considers the following factors:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). The IJ's written ruling makes an express finding that Petitioner met his burden to demonstrate that he is not a danger to the community. (ECF No. 6-5 at 2.) Thus, the immigration court's ruling denying bond rested solely on a determination that Petitioner had not demonstrated that he was not a flight risk. (*Id.*) In making this finding, the IJ relied entirely on two factors: that Petitioner had allegedly overstayed his visa, and that he had been arrested for driving without a license. (*Id.*) In the IJ's view, these were sufficient to outweigh the factors militating in Petitioner's favor.

The Court is not permitted to reweigh the evidence, but when an IJ's determination is not supported by sufficient evidence as a matter of law, the decision denying bond is an abuse of discretion and amounts to a deprivation of the noncitizen's right to due process. *Quan,* 2021 WL 308610, at *4. Here, the IJ placed great weight on Petitioner's arrest for driving without a license, noting that he admitted he had done so "because his wife was feeling tired that day." (ECF No. 6-5 at 2.) While criminal history is relevant to bond determinations, the Court is unconvinced that an alleged violation as minor as driving without a license could support finding Petitioner such an intolerable flight risk that he must remain in the custody of the federal government pending immigration proceedings. *See, e.g.*, *Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) (finding abuse of discretion where IJ impermissibly relied on "[p]etitioner's reliance on public assistance, driving

without a license, and failure to pay taxes" to the exclusion of evidence indicating "that [p]etitioner has a fixed address in Escondido, California; has resided in the United States for 25 years; has four minor children who are U.S. citizens — two of whom require complex medical care; [and] has been gainfully employed in the landscaping industry since he entered the United States . . . .").

Similarly, the allegation that Petitioner overstayed his visa is not sufficient to demonstrate that Petitioner is a flight risk. Firstly, the fact that Petitioner entered the country legally, under a valid visa, is a positive factor under *Guerra* factor 9. Secondly, the fact that the government alleges a person has violated immigration laws will be true in all removal proceedings and does not support a finding that the noncitizen is likely to flee. *See Nazari v. Mullin*, No. 2:26-CV-01904-GJL, 2026 WL 2879665, at *8 (W.D. Wash. Sept. 18, 2026) ("The BIA . . . and several district courts have rejected the perceived weakness of a noncitizen's available forms of relief from removal as a rational basis for a flight risk finding."); *Cruz-Acevedo v. Scott*, No. 2:26-CV-01654-LK, 2026 WL 1623154, at *8 (W.D. Wash. June 5, 2026) (citing *Singh*, 638 F.3d at 1205) ("[A] removal order alone cannot establish that a noncitizen is a flight risk, even where relief from removal is unlikely."); *Matter of Patel*, 15 I. & N. Dec. 666, 666–67 (BIA 1976), *superseded by statute on other grounds as stated in Matter of Valdez-Valdez*, 21 I. & N. Dec. 703 (BIA 1997) ("The factors which the immigration judge considers to be adverse and which in his judgment militate in favor of requiring a bond are that the respondent overstayed his student visa and that the visa petition of which he is the beneficiary was denied because he lacked a labor certification. These factors bear little if any relevance to the issue of whether or not the respondent is likely to appear for his deportation proceeding.").

The Court therefore finds that the record before the IJ was not sufficient to sustain the finding of flight risk.

*ii. Whether the IJ Appropriately Considered Mitigating Evidence*

Petitioner contends that the IJ erred by failing to meaningfully consider mitigating evidence supporting his release on bond. (ECF No. 12 at 7.) Respondents again do not specifically address this issue other than to note that the burden was on Petitioner to demonstrate

that he was not a flight risk, and that "he is free to request another bond hearing if he can demonstrate material circumstances change." (ECF No. 6 at 4.)

Immigration judges must consider mitigating evidence. *See Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (finding abuse of discretion where record did not show that IJ considered significant mitigating evidence); *Singh v. LaRose,* No. 26-CV-1425, 2026 WL 1387428, at *6 (S.D. Cal. May 18, 2026) (finding abuse of discretion due to IJ's failure to consider highly probative evidence).

Petitioner submitted evidence to the immigration court documenting extensive ties to his community, including having a wife who is an American citizen (who was willing to act as his sponsor), a stepdaughter, steady employment, and stable housing. (ECF No. 12 at 27–158.) The IJ stated that he "did consider some positive factors" in favor of Petitioner "such as that he has family ties (in the form of his wife) which could entitle him to reside permanently in the United States, the fact he has been employed, and that he has a sponsor." (ECF No. 6-5 at 2.) However, the IJ failed to adequately explain why these positive factors were outweighed by the negative ones.

The IJ wrote that these factors "do not sufficiently mitigate [Petitioner's] risk of flight" and did not outweigh the fact that he had driven without a license because "[i]f he was willing to break the law to drive, there is no indication he would follow the law when ordered to attend removal proceedings." (*Id.*) The IJ's apparent belief that there was "no indication" Petitioner was likely to appear for future proceedings contradicts his claim that he "considered" the evidence weighing in Petitioner's favor. The Court does not view this as a satisfactory explanation of why Petitioner's significant community ties did not constitute at least some indication that he would appear for further proceedings. *See Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. 2026) ("Here, the IJ relied on Petitioner's immigration history, employment history, and the potential strength of Petitioner's claims for relief from removal to support a finding of flight risk without explaining why those factors established flight risk or how they outweighed the significant evidence showing Petitioner is fixed and stable with his family in his community.").

In support of this finding, the IJ cited *Matter of C-M-M-*, 29 I. & N. Dec. 141 (BIA 2025), but conducted no legal analysis whatsoever applying the reasoning of that decision to Petitioner's case. The facts of *Matter of C-M-M-* are clearly distinguishable, and involved a noncitizen with an "extensive and lengthy history of immigration law violations, including multiple removals and illegal reentries," including "the applicant's decision to engage in violent behavior against her partner by pouring alcohol on his back and setting him on fire using a cigarette." *Id.* at 141–42. These facts stand in stark contrast to those in Petitioner's case, as he has suffered only one criminal arrest for a minor offense, and is charged with a single civil immigration violation.

Finally, the IJ's consideration of Petitioner's wife's submission of an I-130 Application for Alien Relative as a factor supporting detention was fallacious and an abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A . . . court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."). The IJ found that because the form was submitted after his placement into removal proceedings it counted against him as "a negative factor." (ECF No. 6-5 at 2.) The extent to which the immigration court was entitled to doubt the sincerity of Petitioner's attempts to comply with the law, and therefore to weigh this evidence less strongly in Petitioner's favor, is a question beyond the scope of this Court's review. But it is plainly erroneous for the IJ to have *considered against him* Petitioner's exercise of lawful avenues for relief. *Cf. Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("This does not redound to [Petitioner's] discredit, as the government would have it. The BIA appeal and remand motion are perfectly legitimate proceedings he is legally entitled to pursue, and it ill suits the United States to suggest that he could shorten his detention by giving up these rights and abandoning his asylum application.").

The Court therefore finds that the IJ abused his discretion by not appropriately considering mitigating evidence.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the IJ's decision denying bond "reflects clear legal error [and] is unsupported by sufficient evidence." *Quan*, 2021 WL 308610, at *4.

Because this abuse of discretion amounts to a deprivation of Petitioner's right to due process at the bond hearing, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Gonzalo Ariel D.L. A# 222-553-469 from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions. **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2. Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

4. The Motion for Temporary Restraining Order is DENIED as moot. (ECF No. 2.)

5. The Application to Proceed In Forma Pauperis is GRANTED. (ECF No. 11.)

6. **The Clerk of Court is directed to serve California City Detention Facility with a copy of this Order.**

7. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: October 27, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE